LYDLE N. WARNER, (Plaintiff) Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, (Defendant) Appellant, No. 43093—257 S. W. (2d) 75.

Division One, April 13, 1953.

*Arnot L. Sheppard, Warner Fuller* and *Lyman J. Bishop* for appellant.

1084

1086

*Hullverson & Richardson* for respondent.

VAN OSDOL, C.—In this action under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) plaintiff relied upon the inference permitted by the res ipsa loquitur doctrine, and stated the circumstances of an unusual occurrence injuring plaintiff as the foundation for an inference of defendant's negligence as follows, "On or about May 5, 1951, plaintiff, while employed by the defendant, and while operating a tractor in the railroad terminal of the defendant in the City of St. Louis, Missouri, drove said tractor along a platform in which an elevator or hoist formed a part of said platform.

While plaintiff was driving said tractor across said hoist which at that time was level with the platform, said elevator suddenly and without warning was caused to descend as a result of the negligence of the defendant. The defendant had the right to exclusive control of said elevator, its operation, and movement.'' A jury returned a verdict for plaintiff awarding $8500 damages, and defendant has appealed from the judgment rendered.

Defendant-appellant contends (1) that the trial court erred in overruling defendant's motion for a directed verdict. Defendant-appellant argues that to make out a case for the application of the rule of res ipsa loquitur the facts relied upon must be such as to reasonably exclude any other hypothesis than that of the negligence claimed and must exclude any hypothesis that the injury was due to the acts of third persons, as well as that any defect in the instrumentality was latent or of so recent origin as to afford no reasonable opportunity for discovery by defendant. Also, in this connection, defendant-appellant urges that plaintiff's principal Instruction No. 2, which included the requirement that the jury find ''that no one not employed by the defendant operated said cable device so as to cause it to descend,'' was not supported by evidence of probative force and thus the instruction was broader than the evidence and the evidence in this particular respect was insufficient to support the submission of plaintiff's res ipsa loquitur case. Defendant-appellant further contends (2) error of the trial court in giving plaintiff's Instruction No. 5; and (3) in failing to promptly sustain defendant's objection to the assertedly prejudicial cross-examination of a witness. And defendant-appellant also contends (4) the amount of the jury's award, $8500, was excessive.

On May 5, 1951, plaintiff was working for defendant as a baggage hauler at the Union Station in St. Louis. One of his duties was to drive a Case gasoline-propelled tractor in moving baggage trucks or [78] wagons on and about the main platform of the station.

Hydraulic elevators or hoists are provided for access to and from the floor of the subway and the station-platform floor. The elevators are for the use of defendant's employees; but the elevators are also used and operated by express and grocery deliverymen delivering parcels and groceries to the station. The movement of an elevator between the subway and main station floors is governed by controls consisting of chains terminating in metal rings. One of the controls is on the floor of the elevator itself. By this control the elevator is started from the station-floor level and moves down to the floor of the subway. When the elevator is at the subway-floor level, the operator may pull on a chain control in the subway and the elevator is then propelled to the level of the station floor; but there are ''signs all over'' prohibiting the use of this chain control by anyone in

the subway when the elevator is at the station-floor level. Contained in a metal incasement affixed in the concrete station floor, very close to the side of the elevator aperture or shaft, is a chain control by which one at the station-floor level may cause the elevator to come up from the subway floor. "If the elevator is down and you wanted (it) to come up to go down on, why you pull a ring on top and it comes up - - - and when the elevator gets up you get on the elevator and pull a ring on top of the elevator and the elevator goes down." It was admitted that defendant had control of the elevator.

Plaintiff went to work at six o'clock in the morning of May 5th. He went over "on track 10, and got four wagons, empty bull wagons, to put baggage and milk on for Frisco 4, and I come around to track platform 21, and down to the north elevator, just before I got to the elevator, oh, say, twenty inches or two foot of the elevator why I stopped." He uncoupled the wagons from the tractor, "and in place of going straight across the elevator I cut real short as I could and pulled up and when I went—the left front wheel hit the corner of the elevator, why it just automatically went down like a ton of lead if you would drop it in the air. - - - Well I fell and it throwed me and I jumped to get out. To get out to keep from going down the elevator. - - - When I come to I was laying flat on my back (on the station-level floor)." Plaintiff had nothing to do with the maintenance of the elevator. He had no idea what caused the elevator to fall. He had not had anything like that "occur to me before."

Two witnesses for plaintiff, employees of defendant, were sitting in the subway awaiting the time to go to work. They were "talking and just kind of looking away, just staring around watching the movement of people coming in to work. Well, all of a sudden we heard a noise - - - and I was already facing in the direction of the elevator and I seen the elevator make a drop and when it come on inside there was a tractor laying on its left side - - - that was really faster than it should have come down." Although, as stated, it was shown that express and grocery deliverymen used the elevator in delivering parcels and groceries to the Union Station, these witnesses did not see anyone near the elevator chain control in the subway. They didn't believe anybody pulled the control from the bottom on that occasion. "I never seen nobody. - - - there was nobody moving. - - - In a way, we wasn't looking at it in particular, but we was looking and I believe if there had been anybody left there we would have seen them getting away."

There was evidence tending to show that the same day, about four hours later, another employee had pulled the control when the elevator was at the station-floor level. The elevator was delayed in its downward movement long enough that it "should have been almost to the bottom of the subway. - - - that is unusual, usually they start

whenever you pull the chain, but never before nor after have I seen that.''

There was evidence introduced by defendant tending to show that before the occurrence in the morning of May 5th the elevator had been inspected and that, soon after plaintiff's injury and also in the afternoon of the same day, various tests were [79] made and there was no erratic or unusual movement of the elevator; and no defect in the construction of the elevator or fault in its maintenance was discovered.

(1) In general the res ipsa loquitur doctrine does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557. If the facts attending the occurrence permit the inference of negligence, there is no doubt but that res ipsa loquitur applies to the relationship of master and servant under the Federal Employers' Liability Act. Sibert v. Litchfield & M. Ry. Co., Mo. Sup., 159 S. W. 2d 612.

Although there are statements in some cases indicating the contrary, yet it is true that in a res ipsa loquitur case plaintiff is not required to present evidence overthrowing every reasonable theory of nonliability on the part of the defendant. If a plaintiff in such a case were required to produce evidence which would exclude every reasonable theory but that of the negligence of the defendant, the doctrine would be annihilated. Cruce v. Gulf, Mobile & O. R. Co., 358 Mo. 589, 216 S. W. 2d 78. See also Terminal R. Ass'n. of St Louis v. Staengel, 8 Cir., 122 F. 2d 271; Maxie v. Gulf, M. & O. R. Co., 358 Mo. 1100, 219 S. W. 2d 322. As stated in the Maxie case, a plaintiff to come within the doctrine need not show such a state of facts surrounding the accident as excludes every reasonable hypothesis except defendant's negligence. ''*The attendant facts must raise a reasonable inference of defendant's negligence* but they need not also exclude every other inference.'' (Our italics.)

The expressions of this court in denying the application of the doctrine to the facts of particular cases has reference to the essentials of a res ipsa loquitur application to the attendant or surrounding circumstances, or lack of them, and the instrumentality in the particular case considered; but, it is not to be assumed the language used relating to other hypotheses than that of the negligence claimed in the cases considered is applicable to varying attendant circumstances and the various instrumentalities involved in all cases. See generally Vol. 65, C.J.S., Negligence, § 220(10), pp. 1030-1032. Notice the factual situation alleged in Gibbs v. General Motors Corp., 350

Mo. 431, 166 S. W. 2d 575, where the automobile manufactured by defendant had been in plaintiff's possession for about two months and had been driven several hundred miles at the time, when driven by plaintiff, it was caused to veer violently into collision with another vehicle; and see Charlton v. Lovelace, 351 Mo. 364, 173 S. W. 2d 13, where there was no showing of attendant circumstances demonstrating the physical cause of the occurrence. The courts in some cases were obliged to take into account the fellow servant rule. See Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. 2d 702; Removich v. Bambrick Bros. Const. Co., 264 Mo. 43, 173 S. W. 686. However, it was said in Cruce v. Gulf, Mobile & O. R. Co., supra, that expressions in the Grindstaff opinion gathered in part from the Removich case, cited in the Gibbs and Charlton cases, relating to the exclusion of inferences other than negligence of defendant were too broad without the qualification that it is not requisite in order to invoke the doctrine that plaintiff's case be such as "to exclude every hypothesis but that of defendant's negligence."

 In the instant case, as we have said, the elevator was at times used and operated by deliverymen who were not defendant's employees. Plaintiff has shouldered the burden of going forward with evidence tending to negative the hypothesis that a deliveryman might have tripped a chain control. Defendant argues, as stated, that plaintiff's evidence in such respect was not of probative force.

Plaintiff's own conduct in driving onto the elevator, having approached it [80] from some distance in pulling the train of baggage wagons during which approach he apparently had a view of the elevator and its station-floor level controls, tended to show that he had seen no one pull the chain control at the station-floor level. We may assume he was looking where he was going. The two witnesses, who were at the subway-floor level some twenty-five feet from and facing the elevator aperture, were but casually talking. They were not engaged in any serious conversation or preoccupied in any task. It is reasonable to infer that the experience of these employees at the Union Station and their knowledge of the hazard of the use of the chain control in the subway when the elevator was at the station-floor level would have caused them to become alert and observing had anyone approached and used the subway control. We believe the testimony of these witnesses was of sufficient probative force in supporting a reasonable conclusion that no one had operated the chain controls when or just before plaintiff drove the tractor onto the corner of the elevator platform.

 In this connection it would seem that plaintiff, in thus reasonably negativing an inference that the elevator controls were manually tripped or pulled by express or grocery deliverymen, also, in effect, excluded the inference that the controls were tripped by defendant's employees. This, it seems, limited any inference of defendant's

negligence to that of faulty construction or maintenance. Plaintiff was not required to introduce evidence reasonably excluding the hypothesis of a latent defect in the elevator apparatus or a defect therein of so recent an origin as to afford defendant no reasonable opportunity of discovery. Plaintiff had nothing to do with the construction or maintenance of the elevator. As stated in Cruce v. Gulf, Mobile & O. R. Co., supra, it was peculiarly within the knowledge and power of defendant who had the control of the instrumentality, that is, the right of such control, to disclose the cause of the occurrence of plaintiff's injury and to exculpate itself of negligence in causing the injury. See also Terminal R. Ass'n. of St. Louis v. Staengel, supra; Jones v. Terminal R.R. Ass'n. of St. Louis, Mo. Sup., 242 S. W. 2d 473; Sibert v. Litchfield & M. Ry. Co., supra; Pandjiris v. Oliver Cadillac Co., 339 Mo. 711, 98 S. W. 2d 969; McCloskey v. Koplar, supra.

Endeavoring to further implement the contention that plaintiff's case should not have been submitted to the jury, defendant-appellant argues that Section 492.280 RSMo 1949, V.A.M.S. (relating to production of documentary evidence on the taking of a deposition); Section 510.020 RSMo 1949, V.A.M.S. (relating to interrogatories); and Section 510.030 RSMo 1949, V.A.M.S. (relating to the production of documents, etc., and permitting the entry upon property) have now made the evidence of the true cause of an accident as accessible to plaintiff as to defendant, and the res ipsa loquitur doctrine should now be abolished in Missouri. It is true that these Sections of the Civil Code of Missouri are of great utility to a plaintiff in enabling him to plainly state his claim. Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S. W. 2d 25. The use of the process provided by the Sections in many cases should enable a plaintiff to state and prove a claim on specific negligence, although before he would have been obliged to rely upon a res ipsa loquitur inference. But res ipsa loquitur is a part of the law of evidence. McCloskey v. Koplar, supra; Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001; Cudney v. Midcontinent Airlines, 363 Mo. 922, 254 S. W. 2d 662. And the Sections relied upon by defendant-appellant have nothing to do with what facts are essential to state a claim or with what evidence is sufficient to justify the submission of a plaintiff's case. We do not believe that, because of the stated Sections, full knowledge or information relating to the evidence tending to show the causes of all casualties has now become as accessible to a plaintiff as to a defendant. For example, examine State ex rel. Terminal Railroad Ass'n. of St. Louis v. Flynn, 363 Mo. 1065, 257 S. W. 2d 69. And assuming a defendant was in all ways frank and sincere in making disclosures as contemplated by the stated Sections, a plaintiff could [81] not always know what fact was known by whom and how, by interrogation or discovery or inspection process, the full disclosure of all the evidence

supporting material and essential facts could be effectively induced.

(2) Instruction No. 5, given at the instance of plaintiff, was as follows, .

, "The Court instructs the jury that if you find the facts to be as submitted to you in Instruction No. 2 and further find that the defendant was negligent and that such negligence directly contributed, in whole or in part, to cause injury to plaintiff on the occasion mentioned in evidence, then and in that event you are instructed that the plaintiff has sustained his burden of proof mentioned in Instruction No. 4."

It will be noted that the instruction did not submit that plaintiff had sustained his burden of proof upon the finding of the facts of the res ipsa loquitur occurrence, and negligence as submitted in Instruction No. 2 "*by a preponderance or greater weight of the credible evidence,*" or equivalent expression. But defendant's Instruction No. 4 did not advise the jury by a short, simple instruction that plaintiff had the burden of proving his case by a preponderance or greater weight of the credible evidence as this court has so often recommended. Mitchell v. Dyer, Mo. Sup., 57 S. W. 2d 1082; Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. 2d 58; Vol. 1 Raymond, Missouri Instructions, § 126, p. 110. At defendant's request the jury was advised by Instruction No. 4, as follows,

"You are instructed that the demand made by the plaintiff against the defendant in this case is based on the claim that the defendant railroad company failed to use ordinary care under the circumstances shown by the evidence. This claim is denied by the defendant railroad company. The plaintiff, Lydle N. Warner, cannot collect damages unless his claim is proved by evidence which is more worthy of belief than the evidence, if any, which contradicts it.

"The defendant railroad company need not prove that it did use ordinary care under the circumstances shown in evidence, in order to defeat plaintiff's demand for damages. The law compels plaintiff, Lydle N. Warner, to prove by evidence which is more believable than the evidence, if any, which contradicts it, that defendant did not use the ordinary care above mentioned. If, therefore, you believe the evidence favorable to plaintiff Lydle N. Warner is not more believable than that, if any, favorable to defendant railroad company, then plaintiff is not entitled to be paid any damages, and your verdict should be in favor of the defendant railroad company."

The Instruction No. 4 considered as an instruction on the burden of proof was involved and argumentative. In treating with plaintiff's burden of proof, the instruction used only part of the language sometimes employed in defining the term "preponderance of the evi-

dence.'' Now if defendant had requested and there had been given a short and simply worded burden of proof instruction as suggested in Mitchell v. Dyer, supra, we believe the omission of language or the equivalent of the language ''by a preponderance or greater weight of the credible evidence'' from plaintiff's Instruction No. 5 might be considered to have been prejudicially erroneous. This, because the advice by a plainly worded defendant's burden of proof instruction would have been to some extent circumvented by the technically incomplete plaintiff's Instruction No. 5. But here we see no clear conflict or erroneous circumvention prejudicial in character, particularly when the Instructions Nos. 4 and 5 are considered together and with plaintiff's principal Instruction No. 2 which required the jury to find from the evidence the facts as hypothesized in the instruction. This court, in the case of Winters v. Terminal R. Ass'n. of St. Louis, 363 Mo. 606, 252 S. W. 2d 380, considered and ruled against a like contention of error in the language of the first paragraph of the principal instruction given in that case at the request of plaintiff Winters. [82] (Instruction No. 5 submitted ''negligence directly contributed, in whole or in part, to cause injury.'' We believe this was not prejudicial. We think it was a submission with an intended regard for the language of 45 U.S.C.A. § 51, providing liability for injury or death ''resulting in whole or in part from the negligence'' of a defendant in a Federal Employers' Liability Act case.)

■ (3) A physician had treated plaintiff after his injury. The physician was called as a witness for defendant. His testimony tended to minimize the nature and extent of plaintiff's injuries. When the witness was cross-examined by plaintiff, the following questions were asked, and objections, rulings and answers were made as shown by the record,

''Q. (By Mr. Hullverson, plaintiff's counsel) Doctor, when you treat patients you don't ordinarily send out information about them to other people do you?

''Mr. Sheppard (defendant's counsel): Now we object to that, Your Honor, because it is wholly immaterial. It hasn't anything to do with this case at all.

''Mr. Hullverson: Oh, yes, it does.

''Mr. Sheppard: It is merely for the purpose of trying to prejudice the jury against the witness.

''Mr. Hullverson: I have a right to cross examine him about who he sent the report to.

''The Court: This isn't a question of who he sent the report to.

''Mr. Hullverson: Yes. I will ask the question.

''Mr. Sheppard: No, he didn't ask him that.

''Mr. Hullverson: I will ask him that now.

"Q. (By Mr. Hullverson) Doctor, on June the 15th you sent a report to Mr. H. H. Kline, General Claim Agent of the Terminal Railroad Association, didn't you? Yes, I did.

"Q. Were you treating this man for the Terminal Railroad Association?

"Mr. Sheppard: We object to that, it calls for the conclusion of the witness.

"Mr. Hullverson: He ought to know.

"Mr. Sheppard: It is based on a lot of facts, if he wants to go into all the facts about how the man happened to be treated of course that is competent, but not his conclusions.

"Q. (By Mr. Hullverson) Doctor, do you consider it proper as a surgeon and treating people to be broadcasting reports and turning over to the claim departments of companies the report you make?

"Mr. Sheppard: We object to that, Your Honor, for the reason assigned to the previous question.

"The Court: I will sustain the objection.

"Q. (By Mr. Hullverson) At any rate you did send a copy of your report to Mr. Kline? A. I said I did.

"Mr. Sheppard: We object to that, because it is repetitious (no ruling)."

We note that the trial court ultimately sustained objections to all unanswered questions to which objections were directed. When the trial court ultimately sustained the objections to these questions, defendant did not request the trial court to take any further action. The witness answered two other questions to which there was no objection other than upon the ground that the last one was repetitious. The answers to these two questions disclosed that the witness, a physician, who, as stated, had treated plaintiff, had sent a copy of a report of plaintiff's physical condition to defendant's general claim agent. In the situation, the testimony disclosing such fact was admissible, in the trial court's discretion. It tended to show some motive, interest, or bias of the witness in favor of defendant. Kelso v. W. A. Ross Const. Co., 337 Mo. 202 at pages 224-225, 85 S.W. 2d 527 at pages 539-540. The questions answered and unanswered were different from the question propounded on cross-examination to which there was no proper objection and which question was answered by a lay witness in the case of De Maire v. Thompson, 359 Mo. 457, 222 S.W. 2d 93, cited by defendant-appellant, wherein this court upon review affirmed the trial court's discretionary action [83] in sustaining a motion for a new trial on the stated ground that the cross-examination was "highly inflammable."

▬ (4) Viewed in the light most favorable to plaintiff, the evidence shows that plaintiff suffered bruises, a concussion of the brain, and

injuries to his back and left hip as a result of the falling of the elevator. The injury to the back was a compression fracture of the eighth thoracic vertebra, which injury also aggravated a pre-existing arthritic condition. And there is a small bone ("it is sharp on both ends") broken off and lying out away from the sixth cervical vertebra. Plaintiff was hospitalized for eleven or twelve days, but went back to work in a little over a month. He experienced pain at the time he was injured and was in pain when he went back to work, and he is still suffering with headaches, sleeplessness, and painful partial disability of his back. He takes medicines and hot salt baths daily to temporarily relieve his pain and is still, at the time of trial, November 13, 1951, under the care of a physician. He reports to the hospital every two weeks. The compression or "pancaking" of the vertebra and the "lighting up" or aggravation of the arthritis are permanent. At the time of trial and before his injury, plaintiff, forty-eight years old, was earning from around $200 up to around $280 per month. It is readily inferred from the transcript of his testimony that plaintiff has insufficient education to qualify him for clerical work. This means that if he continues to earn his living he may have to continue doing physical work by which he will irritate or aggravate the pain in his injured arthritic back. As stated by a physician, plaintiff's back "is painful now, I know, and I am sure he will have to endure pain from now on." And another physician said, "I don't think he will be without pain as long as he lives. - - - I don't think he should do that kind of work (driving a tractor). - - - I think he has to lead a rather sedentary life." Riding a tractor "I think is going to irritate it."

The nature and extent of the plaintiff's injuries and other factors in Baker v. Kansas City Terminal Ry. Co., Mo. Sup., 250 S.W. 2d 999, were somewhat comparable to those of the instant case. In that case it was held that the maximum award for which judgment should be permitted to stand was $7500. However, in the Baker case there was no substantial evidence of the contended spinal injury—herniated disc; and there was no substantial evidence that the loss of curvature in the cervical spine was the result of the accident. See also Russell v. St. Louis Public Service Co., Mo. Sup., 251 S.W. 2d 595, injury to the knee, but no broken bones; award, as allowed for injury to the person, reduced to approximately $7500.

Having a regard for the factors to be considered in reviewing the case of excessiveness of an award (Young v. Terminal R. R. Ass'n. of St. Louis, Mo. Sup., 192 S.W. 2d 402), we consider the amount of the award, $8500, in the instant case should not be held excessive.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.