Lawrence L. LEISURE, Respondent,

v.

J. A. BRUENING COMPANY, a
Corporation, Appellant.

No. 46382.

Supreme Court of Missouri,

Division No. 1.

Sept. 8, 1958.

James R. Sullivan, Charles R. Svoboda, Paul Barnett, Kansas City, for appellant.

Jack G. Beamer, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondent.

COIL, Commissioner.

Respondent, plaintiff below, received a verdict for $15,500 as damages for personal injuries sustained when defendant's plate-glass window broke and a portion of the glass which fell cut plaintiff's right arm. Defendant appealed from the ensuing judgment and contends that plaintiff failed to make a submissible res ipsa loquitur case and that the judgment is excessive.

Defendant was the owner of the Centennial Building located at the northeast corner of Tenth and Central in Kansas City. That building, at least the portion thereof here involved, was constructed in 1951. The ground floor, as one entered from Tenth, was a garage. A showroom with 12'x10' plate-glass windows (¼-inch thick) on three sides (west, south, and east) formed the southwest corner of the building. Immediately east of the east window was a sidewalk which adjoined the garage entrance driveway. Defendant, to relieve the unattractiveness of an empty show window, arranged with a Kansas City Ford dealer to place therein for display a Ford station wagon. Plaintiff worked for the Social Security Administration whose Kansas City offices were on an upper floor of the Centennial Building. Plaintiff and other employees traversed the above-mentioned sidewalk, immediately east of the east plate-glass window, in entering the building.

On July 9, 1954, plaintiff and his neighbor, Mrs. Weaver, who also worked at the Social Security Administration, were transported by Mr. Weaver to the northeast corner of Central and Tenth and they walked eastwardly in front of the south show window, turned left or north, and walked in front of the east show window. At a place toward the north end of that window, they turned toward it to examine more closely some of the features of the Ford station wagon there on display. Plaintiff was standing six to twelve inches away from the window with a lunch bucket in his right hand. (Plaintiff had lost his left arm as a result of an injury sustained in World War II.) Mrs. Weaver was standing behind and probably a little to the south of plaintiff. While standing there, the window broke and a piece or pieces of glass from the north end thereof and from a place in the window from above the height of plaintiff's head struck and severely cut plaintiff's right arm in the region of the wrist.

Neither plaintiff nor Mrs. Weaver, nor any other thing or person, touched, struck,

or applied any external force to or against the plate-glass window during the time plaintiff was looking into the showroom. Plaintiff testified that he had no idea why the glass broke and fell, and no witness adduced by plaintiff attempted to state the cause thereof.

Defendant adduced many witnesses to support its theory that the cause of the window's breaking was plaintiff's falling into and against it and to negative any other possible cause.

■ The res ipsa loquitur doctrine in Missouri applies when: "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102, 104–105, and McCloskey v. Koplar, 329 Mo. 527, 46 S. W.2d 557, 559, 92 A.L.R. 641." Layton v. Palmer, Mo., 309 S.W.2d 561, 564 [2].

Were it not for the insistent arguments to the contrary advanced by defendant's able counsel, we should have thought it at once apparent that the statement of facts heretofore made without elaboration or demonstration brought the instant case surely within the aforestated prerequisite conditions, and thus that plaintiff made a submissible res ipsa loquitur case. Because of defendant's insistence, however, we shall notice the reasons for its contention that the doctrine should not apply to the stated facts.

■■ Defendant does not contend that it did not have the management and control of the showroom as such and of the display of the objects therein. Defendant's argument that it did not have control of the instrumentality causing plaintiff's injury is based upon the asserted proposition that it did not have control over that side of the plate-glass window which abutted the

sidewalk and thus, says defendant, it did not have that degree of control contemplated as the control element of the res ipsa doctrine. It seems that a statement of that contention demonstrates its fallacy, for it is apparent to us that defendant, or any other building owner, who chose to so construct his building as to cause portions of it to adjoin a public walk or other place where members of the public have a right to be, does not thereby lose control of or the right to control that building and all the portions of it. While the plate-glass window in the instant case may have constituted a "division fence," as defendant contends, in the sense that it enclosed the interior of defendant's premises and thereby prevented the public from entering the showroom, that fact can have nothing to do with the right of defendant to have exercised complete control over all of his property, including both sides of the showroom windows. Defendant may have taken any measure it desired (within lawful limits) to have exercised whatever degree of actual control it wished over its building and all its parts, including the outside of the show windows. The "public side" of a window is no less under an owner's right of control because it may be, by the owner's choice, more difficult to control than the "private side," or because the owner chooses to exercise little actual control over the "public side." And it is well settled that the res ipsa requirement "that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed." McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 560 [2], 92 A.L.R. 641.

Defendant next contends that the occurrence in question was not one that ordinarily would have happened only if defendant was negligent. We think defendant's position in that respect is untenable for the reasons which will appear.

■ It is a matter of common knowledge and an obvious fact that building owners

customarily provide plate-glass show windows for the display of merchandise and that they, or perhaps their merchant tenants, extend an invitation to the public to view the things displayed. And it is equally well known and an equally obvious fact that the building owners or merchants, as the case may be, ordinarily and customarily install and maintain such plate-glass windows so that they will not break and shower glass upon those looking into the windows, i. e., upon those using the windows in the usual and intended manner. It seems to us that it must follow that a jury reasonably could have found that it was a most unusual occurrence and one that probably would not have happened except for the negligence of someone for the plate glass to have broken and to have fallen on plaintiff as he was using the window in the usual and intended manner.

Defendant's corollary point, however, includes the further argument that even though the occurrence might bespeak the negligence of someone, it does not locate that negligence in defendant, and that to permit an inference from those facts that the occurrence was a result of defendant's negligence is to allow a jury to draw an unreasonable inference and to indulge in speculation and conjecture. Defendant, in support of its position, argues that it was just as likely that the window could have been broken by a member of the public or have broken as a result of something some third person did at some prior time, as that it broke as a result of defendant's negligence. Thus, says defendant, plaintiff's evidence does no more than establish a situation in which the evidence equally supports two inferences, one of which points to defendant's liability and the other in a contrary direction, and that thus an essential element of plaintiff's case was thereby lacking.

We cannot agree. Plaintiff's testimony excluded the inference that the window was broken by the application of external force by anyone at the time of or immediately prior to its breaking (defendant's

theory, supported by evidence, as to the cause of the window's breaking), thus limiting, for all practicable purposes, the possible inferences of negligence to faulty installation or maintenance. That being true, it seems entirely clear that a jury reasonably could have found that defendant, as the building owner in control of the showroom and the plate-glass window forming the east wall thereof, was more probably responsible for the negligent installation or maintenance of that window than was some unknown third person who at some unknown time possibly could have done some unknown thing which caused the glass to break.

■■ In any event, the occurrence and its circumstances permitted a reasonable inference of defendant's negligence. And the fact that the window may have broken for a reason for which defendant would not have been liable, did not preclude plaintiff from submitting to the jury the question of whether some negligence of defendant caused or contributed to cause the glass to break. "When it is once determined under the res ipsa doctrine that the breaking of the main [window] raised a reasonable inference of negligence, as we have determined under the facts in the instant case, it is not necessary that the plaintiff go further and exclude every other reasonable theory of nonliability on the part of the defendant. 'If a plaintiff in [a res ipsa case] were required to produce evidence that would exclude every reasonable theory but that of negligence of the defendant the doctrine would be annihilated.' Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 81." (First bracketed insert, present writer's.) Adam Hat Stores, Inc. v. Kansas City, Missouri, en banc, Mo., 316 S.W.2d 594.

■ If, therefore, as we have held, there was sufficient evidence from which the jury reasonably could have found, as required by plaintiff's instruction 1, that the plate-glass window was in the exclusive

possession and control of defendant and that the occurrence was one that does not ordinarily happen if those in charge are not negligent, and that the cause of the breaking was unknown to plaintiff, "then such evidence was sufficient to make a prima facie showing of negligence under the res ipsa doctrine, thereby raising 'a substantial factual inference of defendant's negligence which amounts to evidence, as distinguished from a mere procedural presumption, that does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff.' Clark v. Linwood Hotel, Inc., 365 Mo. 982, 291 S. W.2d 102, 105, and cases therein cited; Layton v. Palmer, Mo., 309 S.W.2d 561, 566." Adam Hat Stores, Inc., v. Kansas City, supra.

Defendant has cited a great number of cases in support of its contention as to nonsubmissibility. We deem it unnecessary and entirely unrewarding to review and discuss those cases. Each cited case illustrates only the application by the respective court of the well-established res ipsa loquitur doctrine to the various circumstances and various instrumentalities involved in that case. As said in Warner v. Terminal R. Ass'n of St. Louis, 363 Mo. 1082, 257 S.W.2d 75, 79 [3]. "The expressions of this court in denying the application of the doctrine to the facts of particular cases has reference to the essentials of a res ipsa loquitur application to the attendant or surrounding circumstances, or lack of them, and the instrumentality in the particular case considered; but, it is not to be assumed the language used relating to other hypotheses than that of the negligence claimed in the cases considered is applicable to varying attendant circumstances and the various instrumentalities involved in all cases." Thus, and further, because none of the cases cited by defendant is factually similar enough to instant case to be a controlling authority in support of defendant's contention that instant

facts were not submissible under the res ipsa loquitur doctrine, and because Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S.W.2d 839, is, in our judgment, specific authority for holding that instant facts do make a submissible res ipsa case, we forego a discussion of defendant's cited cases.

In the Walsh case, plaintiff was walking along a public sidewalk in front of a large office building owned and partially occupied by defendant, when the plate glass in a ground floor office window broke and fell on her. Southwestern Bell had leased that office to a tenant, and thus questions were there involved as to the liability of the landlord as distinguished from the liability of the tenant. However, apposite to the factual situation in the present case, this court said in the Walsh case, supra: "With the further evidence, without more, that the defendant telephone company owned and was occupying and controlling this building from which the window fell on plaintiff, the presumption would arise, or the inference be properly drawn, that such owner and occupant is the responsible party for the negligence." 52 S.W.2d 842. See also, as directly supporting the instant case's submissibility, Barker v. Crown Drug Co., Mo., 284 S.W.2d 559, 560 [1, 2]; Pollard v. J. J. Newberry Co., Mo.App., 228 S.W.2d 398, 400 [3, 4]; Garfinkel v. B. Nugent & Bro. Dry Goods Co., Mo.App., 25 S.W.2d 122; Pearson v. Ehrich, 148 App.Div. 680, 133 N.Y.S. 273, 274 [1].

Defendant's contention that the trial court erred in giving plaintiff's instruction 1 because it required the jury to find that defendant was in exclusive control of the plate-glass window when there was no evidence to support that essential element has been fully answered by what we have said as to submissibility.

Defendant also contends that the judgment is excessive. As heretofore noted, plaintiff's judgment is for $15,500. We do not find that the record discloses plaintiff's age either at accident time in 1954.

or at trial time in 1957. From the fact that plaintiff had lost his left arm and received other injuries while on combat duty during World War II, it might be inferred that plaintiff was somewhere in his thirties in 1954. Be that as it may, he had for several years been and was at trial time an employee of the Social Security Administration where, by trial time, he had advanced to a supervisory capacity. His annual salary at accident time was about $3,700 and he had received subsequent increases. As a result of the loss of his left arm he had spent much time in developing his right arm and hand to the point that he could use them to perform many actions ordinarily requiring both hands. Prior to the instant accident, plaintiff's right arm had not been injured and he had full use thereof.

At the time of the occurrence in question, a piece of glass struck plaintiff's right wrist, severing all the extensor tendons of his right arm. After emergency treatment, he was operated in St. Joseph's Hospital where he remained for eight days. His arm and hand remained in a splint for six or seven days thereafter. He was away from his work as a result of the accident for thirty days. His hospital bill was $200 and his doctor bill $260. Following hospitalization, he saw a doctor every week for a period of time and once every two or three weeks for some time thereafter.

After the splint was removed, his hand was weak. He could not lift anything heavy and for a period of time he had no control of his fingers. His hand, since the accident and at trial time, burned on top of the fourth finger and thumb and that finger and thumb remained constantly numb. His hand continued at trial time to be weak and to tire easily. He had trouble grasping things. He could not tie his shoes, or paint. He could not start the power mower, trim roses or hedges, or light a cigarette with anything other than a kitchen match. He could not eat very well, and he could not fish (formerly his chief form of recreation) successfully because of his inability to handle a reel. Plaintiff could do all of the above-listed things with his right hand prior to instant accident. At trial time, plaintiff could do only a limited amount of hard work as compared with that which he could do prior to the accident. That was because of pain which he suffers in his right arm when he has used it for any length of time. At night and on long automobile drives, his right hand "goes to sleep."

The doctor who had examined plaintiff on three occasions, one each in 1955, 1956, and 1957, testified that the various movements of the wrist and thumb were limited and the gripping power of the right hand reduced. There was an elliptical scar two inches long on the back of plaintiff's wrist and deep pressure thereon caused pain. Plaintiff had to rest his arm after work because of pain in the forearm. At the time of the accident all of the extensor tendons were severed and had to be resutured, except one which was transplanted into the other tendons. It was the doctor's opinion that plaintiff had 35% permanent disability in the use of his right hand and that because his hand would continue to tire easily, plaintiff's ability to do manual labor was limited.

Defendant has cited, as the cases on which it mainly relies to support its contention that the judgment is excessive, Mattice v. Terminal R. Ass'n of St. Louis, Mo., 270 S.W. 306, Jones v. Thompson, 353 Mo. 730, 184 S.W.2d 407, and Radler v. St. Louis-San Francisco Ry. Co., 330 Mo. 968, 51 S.W.2d 1011. We have, of course, examined those cases and others and have taken them into account in reaching our conclusion herein. The case, however, which we find most helpful in attempting to resolve the present question of excessiveness is Ciardullo v. Terminal R. Ass'n of St. Louis, Mo., 289 S.W.2d 96, 99–101. Ciardullo was a railroad switchman, 30 at trial time, who sustained a fractured left elbow. He was away from work

for four months and had a loss of earnings of $1,500 to $1,600. It appeared, however, that his earning capacity had not been diminished. He had sustained a fracture running lengthwise of the bone into the head of the radius, one fragment being displaced, causing an irregularity at the head of the radius which interfered with the range of motion of the elbow. That irregularity was permanent. At the time the cast was removed, there was a 10° loss of extension of the elbow which had by trial time increased to 35°, which came about by reason of the injury to the cartilege which covered the bone. It was thus indicated that there might be a further limitation in his ability to extend the elbow. Plaintiff had a steady pain in his elbow which was worse after he worked. The judgment for $15,000 in the Ciardullo case was reduced to $12,000.

The injury to present plaintiff's right wrist seems fairly equal, in so far as the amount of permanent disability is concerned, to the injury sustained by plaintiff in the Ciardullo case. Special damages in the Ciardullo case were at least twice as much as in the instant case, but in neither was there an unusually large amount of special damages. Plaintiff in the Ciardullo case had no training or education to do other than manual labor and, while there was no evidence that he could not continue to do his work as a switchman, there was evidence from which it was possible to find that the condition of his elbow might become worse and more painful. Plaintiff in the instant case was, by education and training, capable of filling and held a responsible government position in which he had advanced positionwise and salarywise since the accident.

██ The distinguishing feature of the present case, however, is the fact that plaintiff at the time of the accident had theretofore lost his left arm and was thus dependent upon his right arm and hand to accomplish many tasks which ordinarily require the use of two arms and hands; tasks which those with two hands accomplish without thought and without attaching significance thereto. And the jury properly could consider and take into account, and we may also take into account, the fact that the injury plaintiff sustained to his right wrist was more serious and disabling than otherwise because that injury was to his one remaining arm and hand. Considering the fact that a 35% permanent disability of the right wrist and hand has been suffered by a one-armed man, it seems to us that the injury sustained by instant plaintiff is sufficiently more serious than the injury to plaintiff in the Ciardullo case to cause the award in this case to comply with reasonable standards of uniformity without any reduction thereof.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.