Charles Joseph GOLIAN, Respondent,

v.

George Warren STANLEY, Appellant.

No. 47470.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

J. Andy Zenge, Jr., and Richard R. Howe, Canton, for appellant.

Rendlen & Rendlen, Branham Rendlen, Albert L. Renglen, Hannibal, for respondent-plaintiff.

HOLMAN, Commissioner.

At about 5 p. m. on September 19, 1957, plaintiff received serious personal injuries when the truck in which he was riding overturned. The vehicle involved, a 1948 Ford pickup, was owned by the defendant and was being driven by him at the time of the casualty. In this action for damages plaintiff obtained a verdict in the sum of $18,500. Defendant has duly appealed from the ensuing judgment.

Both of the parties lived in Hannibal, Missouri. On the day before the casualty plaintiff had done some gutter work at defendant's home. At that time they had agreed to go to the country the next afternoon in an effort to obtain some crawfish to be used as fish bait. As agreed, they left Hannibal in the late afternoon of September 19 in defendant's truck and drove northwardly on blacktop Highway No. 168. They had driven only 1.6 miles on that highway when the left front wheel suddenly came off of the truck. The axle immediately dropped onto the pavement and the truck "zigzagged" down the highway for a short distance and then crossed to the west side of the highway and overturned as it proceeded down an embankment into a deep ditch. It came to rest on its top with the wheels in the air.

Plaintiff crawled out of an open window in the cab and was able to crawl up the bank to the highway. He could not walk, however, because of pain in his right leg. A passing motorist took plaintiff and defendant to plaintiff's home where an ambulance was called and plaintiff was taken to a hospital.

Defendant returned to the scene of the occurrence and a wrecker arrived and towed the truck into Hannibal. The mechanic in charge of the wrecker picked up the left front wheel some distance south of the truck. The hubcap was still on the wheel and there were at least three lug nuts laying in the hubcap. The hub and five big bolts were still attached to the spindle on the truck. Defendant sold the truck to a junk dealer about a week after the casualty but he retained the left front wheel and drum.

Plaintiff and defendant both testified that there was no unusual noise or vibration in the operation of the truck prior to the time the wheel came off, that there was no noticeable "shimmy" of the wheels, and nothing occurred which indicated any mechanical defect in the operation of the truck. A highway patrolman testified that the in-

cidence of a wheel coming off a motor vehicle is an "unusual" occurrence.

Defendant testified that he had never had any trouble with the steering mechanism or brakes during the eighteen months he had owned the truck; that immediately prior to the time the wheel came off the brakes had operated effectively; that he had never had any repairs made on the truck but had changed the wheels and tires a number of times; that he changed the left front wheel about two weeks before the casualty but all five wheel nuts had been "tightened up good" by him.

Defendant also presented expert testimony to the effect that if wheel nuts became loose the holes became worn and elongated; that a car operated with loose wheel nuts will make an unusual noise and the wheel will wobble. An expert, W. E. Zenge, examined the wheel that came off defendant's truck and expressed the opinion that it had not been driven with the wheel nuts loose. He further stated that in his opinion the wheel bolts in this instance must have broken and that if the nuts are tight even a mechanic cannot examine a wheel and tell whether there is danger of the bolts breaking. There was also evidence that when a wheel and drum came off of a vehicle such as the defendant's truck the brakes do not operate at all.

The issues presented upon this appeal do not require a detailed description of plaintiff's injuries. He received a severe injury to his right knee which required an operation to remove dislocated and torn cartilages. He has lost considerable flexion in the knee and cannot straighten his right leg. Plaintiff is required to wear a shoe with the sole built up two and one-half inches and the heel built up about four inches. His condition is permanent and he can no longer engage in his trade as a sheet metal worker. At trial time he was driving a taxi.

The first contention of defendant upon this appeal is that the court erred in denying his motion for a mistrial because, in the opening statement, plaintiff's counsel stated that "the evidence will show he [plaintiff] was thirty-four years of age, he is now thirty-five, and has a wife and four children. He is the breadwinner —" The court sustained defendant's objection and admonished the jury to disregard the statement but overruled the motion for a mistrial.

■ It is well settled in this state that in personal injury actions it is usually error to permit proof as to the number of members in a plaintiff's family. Daniels v. Banning, Mo.Sup., 329 S.W.2d 647; Heibel v. Robison, Mo.App., 316 S.W.2d 238. Such evidence is ordinarily irrelevant and is generally offered for the purpose of appealing to the sympathy of the jury in an effort to increase the amount of damages that may be allowed. It was therefore improper for plaintiff's counsel to refer to the size of plaintiff's family in his opening statement and the court ruled correctly in sustaining the objection and instructing the jury to disregard the statement. However, the advisability of declaring a mistrial is a matter generally within the sound discretion of the trial court. Under the circumstances disclosed in this case we are of the opinion that the trial court did not abuse its discretion in refusing defendant's request for a mistrial. Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380 [15].

■ Defendant also contends that the court erred in refusing his motion for a mistrial because plaintiff's counsel had repeatedly asked leading questions in interrogating the witnesses for plaintiff. He says he was prejudiced in the eyes of the jury because he was required to make frequent objections to those questions. Rather early in the trial the court, in two instances, warned plaintiff's counsel to stop the practice of asking leading questions. Counsel appears to have made a reasonable effort to comply with the admonition of the court, particularly after the second warn-

ing. Matters relating to the manner of conducting the examination of witnesses and the conduct of counsel during the trial are clearly within the discretion of the trial court. Our review of the entire transcript has convinced us that the trial court did not abuse its discretion in refusing to declare a mistrial because of the tendency of plaintiff's counsel to ask leading questions. Higgins v. Terminal R. Ass'n of St. Louis, supra. We rule this point against defendant.

■ The next contention of defendant is that the court erred in permitting plaintiff's counsel to refer to arthritis in his opening statement and in the examination of witnesses, although there was no allegation in the petition that plaintiff had suffered from that disease. In the opening statement, without objection, he stated: "In addition to this damage, they found that there was what is known as an arthritic condition, or granular condition developing in the knee as a result of this trauma * * *." A little later he said: "This man was treated over and over again to try to relieve this arthritis which was developing." At that point defendant made the objection that the petition did not plead any arthritic condition, which objection was overruled. The allegations in the petition relating to plaintiff's injuries included the following: "Plaintiff suffered a crushed and mangled right leg, and suffered serious bruises, dislocations, abrasions, cuts, contusions and injuries to his leg * * * and serious and painful permanent injuries to his brain, his body and parts thereof; * * * that all the injuries herein described are permanent and progressive." There was no evidence to the effect that plaintiff had actually developed post-traumatic arthritis. Dr. Canella stated that certain treatment had been prescribed "to cut down any possibility of post-traumatic arthritis that might result from an injury to the knee." Dr. Murphy, in describing the permanent condition of plaintiff's knee, stated: "We do feel that in some injuries where the break goes into the cartilage that

a traumatic arthritis, due to the injury, could develop, but that may not develop until four, five or six years."

In support of his contention defendant has cited cases which state the general rule that "a pleader may not be permitted to prove that which he does not allege * * *." Dimick v. Snyder, Mo.App., 34 S.W.2d 1004, 1006. Plaintiff asserts that the general allegations relating to damages were sufficient to warrant the admission of evidence relating to post-traumatic arthritis and cites cases following the rule that "If the condition sought to be shown by evidence is one that naturally and ordinarily, but not necessarily, results from the injuries alleged, the proof may be made under the general allegation." Proctor v. City of Poplar Bluff, Mo.App., 184 S.W. 123, 125. He also says that defendant may not complain of the evidence because he did not file a motion to make the general allegations more definite and certain.

We have concluded that no reversible error resulted from the references to arthritis. In the first place, the case of Gaty v. United Rys. Co. of St. Louis, 286 Mo. 503, 227 S.W. 1041, which involved a somewhat similar situation, rather strongly tends to support the contention that the general allegations were sufficient to warrant proof that plaintiff developed post-traumatic arthritis. Furthermore, as we have heretofore pointed out, there was no proof that plaintiff actually had an arthritic condition. One doctor related that he was seeking to reduce the possibility that it might result and the other merely indicated that it "could develop." In that situation the assertion in the opening statement that arthritis "was developing" would not appear to have been prejudicial. For the reasons indicated, we rule this assignment against defendant.

■ Plaintiff alleged general negligence and in presenting his evidence did not attempt to prove any specific acts of negligence on the part of defendant. Plaintiff's case was submitted under the res ipsa loqui-

tur doctrine. As the next point in his brief defendant contends that the court erred "in submitting the case to the jury under the res ipsa loquitur doctrine, because the evidence shows, without contradiction, that appellant did not possess superior knowledge or means of information as to the cause of the accident."

■ "It is firmly established in our jurisprudence that the res ipsa loquitur doctrine only applies when: (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102, 104–105, and McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641." Layton v. Palmer, Mo.Sup., 309 S.W.2d 561, 564, 66 A.L.R.2d 1242. Defendant has failed to cite any cases which, on the facts involved, support his instant contention. He has been content to cite cases which merely state the principles applicable in a res ipsa case such as those we have quoted from Layton v. Palmer, supra.

We have concluded that plaintiff made a clear case for the application of the res ipsa loquitur rule. In Sakowski v. Baird, 334 Mo. 951, 69 S.W.2d 649, wherein plaintiff was injured when the rear wheel of a motorbus was broken off, we said that it was "a typical res ipsa case." The occurrence in Hanson v. Dalton Coal & Materials Co., Mo.App., 264 S.W.2d 897, was quite similar in some respects to that in the case at bar. Therein a left front wheel of defendant's truck came off and caused the truck to veer across the highway and collide with plaintiff's approaching truck. Upon appeal defendant contended that plaintiff failed to make a res ipsa case because he failed to negative inferences that the accident may have resulted from a latent defect or one of such recent exist-

ence as to afford no reasonable opportunity for its discovery. That contention was ruled adversely to said defendant and the case was held to have been properly submitted under the res ipsa doctrine, the court pointing out that plaintiff was not required to present evidence to exclude every reasonable theory of nonliability on the part of defendant.

In the case under review defendant specifically asserts that the evidence did not show that he possessed superior knowledge or means of information as to the cause of the accident. That contention is without merit. Defendant at all times had actual control of the truck in question. It was his duty to use due care in maintaining the truck so that it would be reasonably safe for travel upon the highways. He had the right to inspect it and hence it follows that he had superior knowledge or means of knowledge as to its condition. Two weeks before the casualty he had changed the instant wheel and, in so doing, necessarily inspected it. After the occurrence in question he had possession of the truck until he sold it a week later. On the other hand, plaintiff had no right of control over the truck or right to inspect it prior to the accident. We accordingly rule that the evidence in this case would reasonably support the conclusion that defendant had superior knowledge or means of information as to the cause of the occurrence.

■ The next point briefed by defendant is that the court erred in overruling his motion for a directed verdict at the close of all the evidence because the evidence failed to show any negligence on the part of the defendant. This contention is apparently based upon the theory that the evidence defendant offered in an effort to exculpate himself from the charge of negligence was sufficient to destroy plaintiff's prima facie case. That theory is clearly erroneous. In discussing a similar contention advanced in a res ipsa case we have said that "A prima facie showing of negligence under that doctrine raises a substantial factual inference of defendant's neg-

**94**

ligence which amounts to evidence, as distinguished from a mere procedural presumption, that does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff." Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102, 105. It therefore appears that our prior ruling to the effect that plaintiff made a submissible case under the res ipsa doctrine actually disposes of the instant contention. The case of Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, is cited by defendant in support of his contention. That case did not involve the res ipsa loquitur doctrine and is so factually different from the case at bar that it has no application to the question here presented. As indicated, the contention under consideration must be ruled adversely to defendant.

 Defendant's final point is that the court erred in admitting two photographs in evidence. Those photographs were taken in January 1958 and show the condition of plaintiff's knee at that time. Defendant says the introduction of the photographs was unnecessary because plaintiff exhibited his knee to the jury at the trial and further asserts that the sole purpose in offering the photographs was to arouse passion and prejudice against defendant. He cites no authorities in support of his contention.

The fact that plaintiff exhibited his knee to the jury at the trial would not have been a valid reason for excluding the photographs in question. They were taken a year before the trial and showed the swollen condition of plaintiff's knee at that time. Moreover, we see nothing gruesome about the pictures that might tend to arouse the sympathy of the jury. We accordingly rule that under the circumstances presented the trial court did not err in admitting those photographs in evidence. Lynch v. Baldwin, Mo.Sup., 117 S.W.2d 273; Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.