Joseph RUSSO, (Plaintiff) Appellant,

v.

Glen (Red) GARRISON, d/b/a Red's Village Service, (Defendant) Respondent.

No. 30726.

St. Louis Court of Appeals.

Missouri.

May 15, 1962.

William R. Kirby, St. Louis, for appellant.

Fred B. Whalen, Whalen, O'Connor & Grauel, St. Louis, for respondent.

JOHN J. KELLY, Jr., Special Judge.

This is an appeal by the plaintiff, Joseph Russo, from a judgment for the defendant in the Circuit Court of St. Louis County, Division No. 4. The prayer in the Plaintiff's Amended Petition upon which the case was tried was for the sum of Fifteen Thousand Dollars ($15,000.00) and costs; jurisdiction lies, therefore, in this court.

Plaintiff's Amended Petition alleged that the defendant was the owner and operator of the filling station where the accident occurred and that plaintiff was a business invitee who, while upon the premises, was

caused to step into a hole and sustain injuries as a direct result of defendant's negligence in (1) allowing an open hole to be on the premises without warning plaintiff or covering or barricading the said hole, and (2) defendant's failure to provide sufficient cover that would not move or become displaced when one stepped upon it.

Defendant's Answer consisted of a general denial and by way of affirmative defense, (1) contributory negligence, and (2) that plaintiff's employer, Monark Petroleum Company, while maintaining control of the service station premises in constructing an all-weather surface on the premises, placed, installed and maintained a loose and insecure cover over a manhole into which plaintiff fell, and that the employer's negligence was, therefore, the direct cause of any injuries or damages plaintiff sustained at the time and place in question.

The evidence viewed most favorably from the viewpoint of the defendant was that on the day plaintiff was injured he was in the employ of the Monark Petroleum Company as a wholesale tractor-trailer gas tank driver making a delivery to the Red Garrison Service Station situated on the southwest corner of St. Louis and Glen Echo Avenues in the Village of Hillsdale, Missouri. The service station building itself faced a generally northerly direction and was a new building which had been constructed to replace a former service station which had burned down prior to the time defendant commenced operating the business in January, 1959. In the course of reconstruction two underground gasoline storage tanks were installed in the lot adjacent and to the east of the service station building and two gasoline service pumps and a blacktop driveway were installed on the north side of the service station. The two storage tanks were laid in a north-south direction, parallel to the east side of the building, and the one at which plaintiff sustained his injury was the easternmost tank some

eleven to twelve feet east of the building itself, and about three feet south of the blacktop driveway. Each tank had a fill-cap for the delivery of gasoline into the tank at the south end of the tank, and at the north end had what was referred to in the evidence as a "pit" or a "well" over a pump located on top of each tank for the purpose of pumping gas from the tank to the island gas pumps where the gas was delivered to the consumer. The "well," as it shall be referred to hereafter, was about four feet in depth and lined with a horizontally corrugated metal "casing" some two feet in diameter. Each "well" was covered with a sheetmetal lid which fit into the metal casing and was held in place by a four cross-member angle-iron one-half inch in thickness and located on the underside of the cover. The cross-member angle-irons, which in the evidence were referred to as "lugs," were made to rest on one of the horizontal ridges of the corrugated casing in the "well" so as to hold the cover securely in place. The lugs on the cover were too short to prevent the cover from slipping back and forth in the "well" and the defendant had in the past experienced difficulty in keeping the covers in place; in fact, he testified that he knew the covers were not safe and for that reason he had on prior occasions parked small trailers, fifty gallon oil drums and his own car over the covers to keep other persons and vehicles from passing over them. Due to the settling of the ground around the storage tanks the casing lining the "well" extended above the surface of the ground some two to three inches and the area in the vicinity of the tanks had not as yet been covered with chat, but had been filled in with dirt and brickbats.

On the day of the occurrence, March 5th, 1959, plaintiff drove the tractor-trailer onto the premises of the service station to make a delivery of gasoline and was directed by the defendant to fill the easternmost of the tanks first because that was the tank for the "regular gas" and he was short of "regular gas." Plaintiff drove

southwardly along the east side of the lot on which the tanks are located and stopped on the partially filled surface of the lot. The tractor faced southwardly when he brought it to a stop some four feet to the east of the cover on the "well." Plaintiff alighted from the tractor on the left, or driver's side, walked northwardly to the rear of the trailer and removed therefrom a fourteen foot length of hose used for delivering the gas from the trailer to the tank, and then pulled it out of the trailer its full length. Plaintiff then walked southwardly, picked up the other end of the hose and while walking backwardly pulled the hose with both hands towards the fill-cap on the south end of the tank. While so engaged plaintiff stepped on the cover which became displaced causing plaintiff's left leg to go into the hole over the east-ernmost of the tanks and be injured. When defendant's father and wife arrived on the scene a few minutes after the plaintiff fell, the cover was observed in a tilted condition. Defendant, likewise, found the cover tilted when he arrived. At all times the cover and casing which extended two to three inches above the surface of the ground were visible, and it could be observed that the cover was warped and did not fit securely into the corrugated casing by anyone who looked down into the casing. On the day of the injury the defendant did not warn the plaintiff of the condition of the cover nor the casing.

Plaintiff contends that the trial court committed errors in the following respects:

1. The Court erred in overruling Plaintiff's Motion for Directed Verdict at the close of the entire case.

2. The Court erred in giving and reading to the jury Instruction No. 3, an instruction presenting to the jury the defense of contributory negligence.

3. The Court erred in giving and reading to the jury Instruction No. 5, an instruction to the effect that the jury could not find negligence from the "mere fact of the occurrence."

4. The Court erred in overruling plaintiff's objections to defendant's questions pertaining to the duty or agreement of the Monark Petroleum Company with the defendant whereby Monark Petroleum Company was to make repairs on the premises of the service station.

5. The Court erred in sustaining defendant's objection to plaintiff's use of the word "Landlord" in plaintiff's closing argument.

Inasmuch as we have reached the conclusion that the giving and reading to the jury of Instruction No. 3 constituted prejudicial error and misdirection, the other alleged errors will not be treated in this opinion except that some comment will be made relative to plaintiff's charge that the trial court erred in overruling Plaintiff's Motion for Directed Verdict at the close of the entire case. The other alleged errors, if such they were, may not occur again in a retrial of the case.

There was evidence in the case from which the jury could have found that the plaintiff had been on the premises prior to the date of his injury when the condition of the casing and the cover over the "well" were readily visible and that the defendant had warned the plaintiff of the dangerous condition of the casing and the cover. If the jury should find these facts to be so, a case of contributory negligence would be made to be submitted to the jury under proper instructions.

■ Instruction No. 3 as given and read to the jury is as follows:

"The Court instructs the jury that if you find from the credible evidence in this case that the casing of the pit that enclosed the motor for the gasoline pump owned by Monarch (sic) Petroleum Company, extended two or three inches above the level of the filling station surface, and had a cover which was loose and insecure, and if you find that such condition of the casing and the cover was open and obvious, and if you find that in the exercise of ordi-

nary care plaintiff would have seen the condition of the casing and the cover and should have avoided stepping on same, then in that event you are instructed, that if you find plaintiff stepped on the casing and cover because he failed to exercise ordinary care to look and see the condition of the casing and cover, then plaintiff was negligent, and if you find that such negligence, if any, directly caused or contributed to cause plaintiff to be injured, then plaintiff is not entitled to recover against defendant in this case and your verdict must be in favor of defendant."

Plaintiff contends this instruction is erroneous because, among other reasons, it omitted essential fact findings by the jury that the condition of the cover was dangerous and that the plaintiff had knowledge, either actual or constructive, that the condition aforementioned was dangerous. We are of the view that plaintiff's contention is well taken.

■ An essential element of contributory negligence is that the plaintiff acted or failed to act with knowledge and appreciation, actual or constructive, of the danger of injury. That one has knowledge of the general condition from which the danger arose does not necessarily constitute knowledge and appreciation of the danger. Bartlett v. Taylor, 351 Mo. 1060, 174 S.W. 2d 844, 1. c. 851; Ezell v. Kansas City, Mo.Sup., 260 S.W.2d 248, 1. c. 250.

This case was tried on the theory that the plaintiff stepped on a loose and insecure cover and was thereby injured. There was no evidence that the plaintiff tripped over the casing in the "well." While there was testimony that if one looked directly down at the cover it could be seen that the cover was loose and insecure, there was no evidence that one could detect that this cover would become displaced, unless he picked up the cover, removed it from the "well" and examined the angle-irons which were to hold it in place. The instruction as given permitted the jury to find the plaintiff

guilty of contributory negligence if it found (1) the casing of the pit which enclosed the motor for the gasoline pump extended two or three inches above the level of the surface of the ground; (2) that it had a cover which was loose and insecure; (3) that the condition of the casing and cover was open and obvious; (4) and that in the exercise of ordinary care the plaintiff would have seen the casing and cover; (5) that from those facts alone it could find that the plaintiff "should" have avoided stepping onto same, and (6) that if he stepped on it because he failed to exercise ordinary care to see the condition of the casing and cover, plaintiff was then contributorily negligent and could not recover from the defendant. The instruction is fatally defective in that it did not require the jury to find, in addition to the facts recited, that the plaintiff in the exercise of ordinary care either knew or should have known that to step on the cover under the circumstances hypothesized would be likely to cause him some injury.

■ This cover over the "well" was an invitation for one walking over and along the premises and in the vicinity of the gasoline storage tank to step upon it if it was in his path. It could properly be used for that purpose. The cover, of itself, did not constitute such an open and obvious danger in its loosened condition as would constitute stepping upon it negligence per se. There had to be a finding that the plaintiff stepped upon the cover with knowledge and appreciation, either actual or constructive, of the danger of injury before he could be found guilty of contributory negligence; and this the instruction fails to require.

The trial court erred in giving and reading to the jury Instruction No. 3 and, therefore, this case must be reversed and remanded with directions for the trial court to enter an order for a new trial.

ANDERSON, P. J., concurs.

RUDDY, J., took no part in the decision of this appeal.