Mrs. A. J. WALKER, Respondent,

v.

Edwin NIEMEYER and Grace Niemeyer, Appellants.

No. 50431.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1965.

88

W. F. Daniels, Fayette, for respondent..

Dale Reesman, Boonville, for appellants..

DALTON, Judge.

Action for $25,000 damages for personal injuries alleged to have been sustained by plaintiff when she fell on the steps of a. building (a former residence) owned by defendants, which building had been divided: into four apartments, two on the first floor and two on the second. Plaintiff was a. tenant of one of the second-floor apartments: and was using a stairway provided by defendants for the use of the second-floor tenants at the time she fell. Verdict and judgment were for defendants, but the Court granted plaintiff a new trial on the ground that "defendants' instructions D-4, D-5,. D-6 and D-11 are erroneous and misdirected the Jury because each of them fail to contain a proper and sufficient factual hypothesization of the evidentiary facts."

Defendants have appealed and, as appellants, here contend that the Court erred in refusing to direct a verdict for defendants at the close of all the evidence, as requested by defendants, (1) because plaintiff failed to make a case for the jury on plaintiff's claim; and (2) because plaintiff was guilty of contributory negligence as a matter of law.

■ In considering the issues presented, a statement of the evidence most favorable to plaintiff is required. We shall disregard defendants' evidence unless it aids plaintiff's case. Neal v. Kansas City Public Service Co., 353 Mo. 779, 184 S.W.2d 441, 442 [1,2]. Our statement shall also include the evidence most favorable to plaintiff on the issue of whether she was guilty of contributory negligence as a matter of law. Goldbaum v. James Mulligan Printing & Publishing Co., 347 Mo. 844, 149 S.W.2d 348, 351 [2].

As stated, plaintiff was a tenant of defendants and was occupying one of the mentioned second-floor apartments. She was seventy-two years of age and had moved into the building on April 25, 1960, only a few days prior to sustaining her injuries, on April 29, 1960.

One of the defendants testified that she and her husband owned the property and had reserved the use of the stairway for their tenants. She also testified that she kept the steps clean and looked after the stairway. The record does not show how long the defendants had owned this apartment but the other defendant testified that he had last varnished the steps approximately two years prior to plaintiff's fall.

Access to the second-floor apartments was ordinarily gained through an outside door on the north side of the building, although there was also a back stairway. The outside door on the north side of the building opened into a vestibule about four feet square and the mentioned stairway led up to the right or to the west to a landing which was about the same size as the vestibule.

There were three steps from the vestibule floor to this landing from which the stairway led up to the left some eleven steps to a second landing, where there was an outside window. The stairway then went up to the left or east four steps to the second-floor hallway. The outside window threw some light on the second landing, but none on the lower steps.

There was a light cord hanging from the ceiling of the second landing, with the light bulb (60 watt) about nine feet nine inches above the floor of the second landing (fifteen and one-half feet above the first landing), "just a drop cord with an ordinary light bulb in it." There was also a light fixture located on the north wall of the vestibule above the first and second steps, which fixture was seven feet eight inches from the vestibule floor. The light above the second landing was operated by a switch located to the right or west side of the vestibule door and also by a switch located in the second-floor hall. The light fixture above the first steps from the vestibule was operated only by a switch to the right of the outside door. The same switch operated a porch light outside the north entrance door. There was a venetian blind and some drapes covering the glass portion of this outside door. On the left side of the mentioned stairway going up, there was a bannister all the way to the second floor, while on the right side of the stairs was the outside wall of the building.

There was testimony that even with the upper light on at the head of the stairway it threw no light, or very little, on the bottom three steps because the light was actually behind a wall and, as stated, this upper light was some fifteen feet above the first landing. Other testimony tended to show that the nose or under-cut area of the bottom three steps varied; and that the steps were of wood, worn, stained dark, varnished and waxed.

A witness for plaintiff measured the rise of each of the three steps between the vestibule and the first landing and determined

that the rise of the first step was six and one-half inches; the second, five and five-eighths inches; the third, five and thirteen-sixteenths inches and the last rise to the first landing was five and five-sixteenths inches. He also found that there was a slight variation in the width of the treads, the tread on the first step being nine and a quarter inches; the second, nine and seven-sixteenths inches and the third, nine and five-sixteenths inches. This same witness stated that at the time he examined these steps on February 21, 1963, at 4:30 in the afternoon of a clear, cold day he found wax on the steps which he could remove with his fingernail; the yellow material he so obtained was wax and not varnish, which you would have had to scrape off. No objection was made to this testimony although defendants claimed to have sold the property prior to the mentioned date. "The nosing [on the mentioned three steps] was five-eighths of an inch, one-quarter of an inch, and three-quarters of an inch [respectively], a variation of one-half inch." The nosing on these steps was "worn and well varnished and waxed."

Concerning these three steps, plaintiff testified: "They are rather narrow steps" and "they are worn until they are round on the edge." She also testified that the steps were waxed and had a nice gloss. At the time she fell she was wearing dress oxford shoes with an inch and a half heel, not a spike heel.

Neither the owners of the apartment nor anyone else had instructed plaintiff with reference to the operation or use of the front stairway lights. Plaintiff had been using the rear stairway and had been up and down the north stairway no more than twice prior to her fall. On that date she left her apartment and went to the grocery store where she obtained two sacks of groceries and, after parking her automobile, she carried the two sacks of groceries into the north vestibule of the house. She placed one of the sacks on the second step up from the vestibule floor and carried the other sack up the stairs to her apartment.

When she was at the grocery store a light mist was falling so that the walks were damp or wet and, when she returned home and entered the house, she did not wipe her shoes off on the rug on the vestibule floor, but came in over it. She did not attempt to turn on either of the light switches located to the right of the door, although she had seen and observed the location of the switches. There was enough light from the window so she could see to go up the steps. When she reached her apartment she walked through the living room of her apartment and back to the kitchen, where she placed the groceries on a table and started back for the rest of the groceries. She used the light switch in the second-floor hall to turn on the top light above the second landing, but it did not throw any light on the lower steps. The first-floor light was not burning and, as stated, could not be turned on from the second floor.

When plaintiff started back down the steps for the other sack of groceries, she placed her right hand on the bannister, until she reached the first landing up from the vestibule; she turned to her right on the landing and started down the remaining three steps without holding to the bannister. On either the first or second step below this first landing, she started to turn to pick up her groceries and her foot slipped from the step and she fell, breaking her hip. She also testified: "I was coming down the steps when my foot slipped. * * * I just made this turn and my foot slipped out from under me. * * * I was looking toward my sack of groceries. * * * Oh, yes. I could see the steps, but then they weren't lighted. It would be just like these steps if there was a shadow on them. * * * I could see the steps then because I guess my eyes had gotten used to what light there was there." She also testified that, at the time she fell, while she could see the last three steps, she could not see them plainly "because the light was not on them and it was dark that afternoon." When she fell, she had not actually bent over to pick up the

groceries she had placed on the second step.

After defendant's motion for a directed verdict had been overruled at the close of all the evidence, the plaintiff submitted a finding by Instruction No. 1, as follows: "* * * that the defendants were the owners of the property located at 402 Center Street, Boonville, Missouri, and that on said property was located a two story residence made into four apartments, * * * that one of the second story apartments was rented and occupied by the plaintiff and that to said apartment were steps leading from the front door, which said stairway was used by the occupants of the upstairs apartments and the lower apartments as a common stairway, * * * and if you find that on April 29, 1960, the day plaintiff was injured, that said stairway and steps were worn, of uneven height and width, worn smooth on the edges of said steps and that said steps were varnished and thereby made slippery, if you so find; and that defendants failed to provide an electric switch at the top of said stairway that would turn on a light to illuminate the lower portion of said stairway, if you so find; and if you further find that because of the aforesaid conditions said steps and stairway were not reasonably safe for plaintiff to use, if so, and if you further find that said conditions as aforesaid had existed for such a period of time that the defendants knew, or by the exercise of ordinary care, should have known thereof in time to have remedied said conditions and made said stairway and steps reasonable safe to use, but that defendants failed to do so, and if you further find that defendants were thereby negligent; and if you find that as a direct result of defendants' negligence, plaintiff, while descending said stairway and exercising ordinary care for her own safety, if so, plaintiff was caused to fall and be injured; and that plaintiff was not guilty of contributory negligence as submitted in other instructions herein, then your verdict should be in favor of plaintiff and against defendants."

In her motion for a new trial plaintiff stated that she "did not submit her case on lack of light or illumination, but on defendants' failure to (1) provide a light switch upstairs which would illuminate [sic] the downstairs portion of said stairway and (2) structural defects of said stairway." She also states that improper lighting * * * was not an issue in the case and had not been submitted to the jury."

As stated, under Point I of their Points and Authorities, appellants contend that the trial court erred in not sustaining defendants' motion for a directed verdict presented at the close of all the evidence. Supreme Court Rule 72.01, V.A.M.R. However, defendants have appealed from an order granting plaintiff a new trial and, under Point I, the defendants, as appellants, have made no reference to the Court order from which they took this appeal. Appellants admit that in considering a motion for a directed verdict the Court must take plaintiff's evidence as true and give her the benefit of all favorable evidence and every reasonable inference that may be drawn from the evidence. Appellants, however, insist that this rule does not require the Court to give plaintiff the benefit of anything other than reasonable inferences; and that it does not relieve plaintiff from the burden of introducing substantial evidence tending to prove facts essential to a recovery on her claim. Appellants further argue that there is no substantial evidence tending to prove that the stairway in question was defective in any manner, or slippery or the lighting insufficient. Appellants cite Probst v. Seyer, Mo.Sup., 353 S. W.2d 798, 802, 91 A.L.R.2d 1252, holding that the finding of an essential fact necessary to plaintiff's recovery may not rest upon guess work, conjecture or speculation beyond inferences reasonably to be drawn from the evidence; and Linneman v. Freese, Mo.Sup., 362 S.W.2d 585, 587, holding that no fact essential to liability may be found or inferred in the absence of a substantial evidentiary base therefor.

While *appellants under this point have not mentioned the fact that their appeal was from the order granting plaintiff a new trial, we shall assume that the assignment was intended to be directed to that issue,* because it has been repeatedly held that, if plaintiff failed to make out a submissible case for the jury on his claim, the errors, if any, in giving instructions or in the admission of evidence are immaterial, where the defendants have appealed from an order granting the plaintiff a new trial after verdict for defendants. In Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660, this Court held that, where defendants appealed from an order granting plaintiff a new trial after a verdict for defendants, in determining whether the trial court had properly awarded a new trial for error on the ground that the verdict was against the weight of the evidence, this Court would examine the record to ascertain whether there was sufficient substantial evidence to justify the submission of plaintiff's case to the jury, or to sustain a verdict for plaintiff, the party to whom the new trial was granted. Other cases also hold that, if plaintiff did not make out a submissible case, the errors, if any, in instructions upon which the Court acted in granting the plaintiff a new trial are immaterial. Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365, 366 [1].

The only case cited by appellants with reference to a person falling on steps is the case of Heidland v. Sears, Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795, 799 [2, 3], where the negligence charged was failure to have a rubber mat on a particular part of the floor of a store and where it was held that a customer in a store had a duty to look where she is walking, particularly when starting to go down steps; and that in a customer's action against the store for injuries sustained from slipping and falling at the head of a basement stairway, where the evidence showed that the vestibule and stairway were properly lighted and were not defectively constructed and there was nothing to prevent the customer from seeing water on the steps (tracked in by other customers) which water might cause her to slip, and the customer did not look at the steps or floor which were wet because of the rainy weather, established that the customer was guilty of negligence contributing to her injury and barred recovery. That case also quotes from a case stating that "Generally speaking, the rule is that the owner of premises is liable to an invitee, using due care, for an injury to him occasioned by the unsafe condition of the premises which is actually or constructively known to the owner but not to the invitee, which the owner has negligently suffered to exist, and of which the invitee has no knowledge or notice." English v. Sahlender, Mo.App., 47 S.W.2d 150, 153 [1, 2].

The rule is not applicable here, where we are dealing with the duty of a landlord to provide a reasonably safe means of ingress and egress over a common stairway provided for the use of several tenants. Peterson v. Brune Realty Co., Mo. Sup., 273 S.W.2d 278, 280, and cases therein cited; Feld v. Frankel, Mo.Sup., 351 S. W.2d 755, 757; Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 493.

In Barber v. Kellogg, Mo.Supp., 123 S.W. 2d 100, 102, the Court held that where the landlord undertakes to furnish lights in a common hallway he must exercise reasonable care and will be liable for injuries to persons lawfully upon the premises who are injured by reason of the landlord's negligence. In that case the petition charged that "the defendants were negligent in failing to furnish an electric light switch at the second floor of the apartment to enable the tenants to turn on the lights in the lower hall; that the light at the second floor was insufficient to light the lower part of the steps due to the right-angle turn in the stairway." (123 S.W.2d 100, 102.) The Court held: "We do not mean to hold that the evidence showed negligence as a matter of law, but it would not be unreasonable for a jury to find that

ordinary care required a switch at the second floor so that a person, as plaintiff in this case, could turn on the light before descending the steps."

█ We have hereinbefore reviewed the evidence in the record which tends to show that the first three steps up from the vestibule were worn until they were "round on the edge"; that they were stained dark, varnished and waxed; that they varied in width and height (or rise); and that plaintiff's foot slipped on either the first or second step and she was caused to fall and sustain injuries. The evidence further shows that there was no way to light the lower steps from the second floor. The evidence was sufficient to infer notice to the landlord of the condition of the steps and the location of the lighting switches. The duty of inspection was on the landlord. Kroeker v. Stecken, Mo.App., 31 S.W.2d 229, 230 [1, 2].

"Negligence does not become a question of law alone unless the acts upon which its existence depends are of such character that all reasonable men would concur; and where different conclusions can be drawn from the evidence, it is a jury question." Steele v. Woods, Mo.Sup., 327 S.W.2d 187, 200.

We think an inference could be drawn from these facts that the steps were slippery and not reasonably safe; and that the evidence in the record was sufficient to support the submission of defendants' negligence as made by plaintiff's Instruction No. 1, hereinbefore set out.

█ Appellants further insist that plaintiff was guilty of such contributory negligence, as to bar her from right of recovery *as a matter of law*, citing In re Thomasson's Estate, 346 Mo. 911, 144 S.W. 2d 79, 91, which is not a negligence case. Appellant's theory is that plaintiff is barred by her own testimony. Appellants insist that "plaintiff expressly testified that she (1) started using the stairway without the aid of artificial light, although she knew of the location of the switches; (2) failed to use the bannister in her descent after reaching the lower landing, and (3) turned to her right on one of the steps below the lower landing while failing to use the bannister."

There was no evidence tending to show that the danger from the use of the steps was so obvious that plaintiff should not have used the stairway. Plaintiff's testimony failed to show contributory negligence as a matter of law. Roman v. King, 289 Mo. 641, 233 S.W. 161, 166 [11] [12], 25 A.L.R. 1263; Brandt v. Thompson, Mo. Sup., 252 S.W.2d 339, 341 [1] [2, 3]; Gentili v. Dimaria, Mo.App., 89 S.W.2d 93, 95 [2]; Dalton v. John Maguire Real Estate Co., Mo.App., 221 S.W. 443, 446 [8, 9]; Lewis v. Gershon, Mo.App., 335 S.W. 2d 522, 524–525. Further, the failure of plaintiff to continue to use the handrail did not constitute contributory negligence as a matter of law. Stafford v. Fred Wolferman, Inc., Mo.Sup., 307 S.W.2d 468, 474 [5–6]; Monsour v. Excelsior Tobacco Co., Mo.App., 115 S.W.2d 219, 223 [9, 10]; Savona v. May Dept. Stores Co., Mo.App., 71 S.W.2d 157, 159 [4, 5]. Nor did plaintiff's use of the steps without proper lighting constitute negligence as a matter of law. Swanson v. Godwin, Mo.Sup., 327 S.W.2d 903, 910 [6, 7].

On the record presented the issues of negligence and contributory negligence were for the jury. The Court did not err in refusing to direct a verdict for defendants at the close of all the evidence, hence the Court did not err in granting plaintiff a new trial, if there were errors in the instructions, a matter which we must now consider.

As stated, the trial court granted plaintiff a new trial, after verdict for defendants, on the ground that certain specified instructions "failed to contain proper and sufficient factual hypothesization of the evidentiary facts." Plaintiff in her motion for a new trial charged that "Said Instructions D–4, D–5, and D–6 and D–11 are

erroneous because said instructions did not hypothesize an essential evidentiary fact in that said instructions made no mention of the condition or structural make-up of said stairway." Numerous other objections to defendants' instructions were made in plaintiff's motion for a new trial, some of which she now urges in support of the Court's action in granting her a new trial.

Plaintiff, as respondent, summarizes her complaints against the mentioned instructions, as follows: "All of said instructions failed to hypothesize any facts or to detail and mention the condition of the steps or that plaintiff knew or should have known that to use the stairway would likely cause her injury. Said instructions enabled the jury to find the plaintiff contributorily negligent if the jury found that the following bare statements were true, namely: In D–4, ' * * * that the plaintiff failed to look where she was walking as she descended from the lower landing of the stairway mentioned in the evidence.' In D–5, plaintiff, ' * * * after reaching the lower landing of said stairway failed to use or place her hand on the handrail as she continued to descend said stairway', etc. In D–6, ' * * * plaintiff should have known of the existence of the light switch in downstairs hall, which light switch controlled the light in the downstairs hall and that plaintiff failed to operate said light switch and voluntarily chose to use said stairway without artificial light in said entrance hall.' In D–11, ' * * * plaintiff, in descending the stairway from the lower landing, before reaching the bottom of the stairway, started to turn to her right on one of the steps, and failed to exercise ordinary care in so doing', etc. In none of these instructions is any mention made of the condition of the stairway, one of plaintiff's conjunctive submissions, nor of the failure to provide a light switch at the *top of the stairs* which would illuminate the bottom (where plaintiff fell)."

Respondent argues that "in D–4, if plaintiff failed to look, no matter what the condition of the stairs or the failure to provide lights, she could not recover; in D–5, if plaintiff failed to use the hand-rail, she could not recover, no matter what the condition of the steps or the lights. In D–6, if plaintiff failed to use the switch downstairs and to use the stairs without light, she could not recover—no matter what the condition of the stairs and in D–11, if plaintiff 'started to turn to the right' (nothing more) and failed to exercise care in so doing, she could not recover, no matter what the condition of the stairs or the lighting."

■ Appellants insist that the Court erred in granting plaintiff a new trial because each of the mentioned instructions "fully hypothesized all essential evidentiary facts for a finding on contributory negligence." In further support of these instructions appellants cite numerous invitee-landowner or possessor cases such as Dietz v. Magill, Mo.App., 104 S.W.2d 707, 710, 712 and Smith v. Alaskan Fur Co., Mo.Sup., 325 S.W.2d 740, 745, but the rule of law governing contributory negligence in an action by an invitee against a landowner or possessor of real estate is not the same as the rule governing contributory negligence as between a tenant and his landlord. We will now consider such cases.

In the case of Roman v. King, supra, 233 S.W. 161, 165, the Court pointed out that the "Mere continued use of a common passageway, after knowledge of its dangerous condition, is not of itself conclusive evidence of a lack of due care on the part of the tenant, since such knowledge does not require the tenant to desist from using same in a careful manner, nor render the careful use of same contributory negligence."

In Brewer v. Silverstein, Mo.Sup., 64 S. W.2d 289, 291, the Court said: "Although plaintiff knew the step was defective, yet, if she reasonably believed she could, with care, safely go upon it, her knowledge of its defective condition did not require her to desist from using it nor render the careful use thereof negligence on her part."

In Lewis v. Gershon, supra, 335 S.W.2d 522, 524, the Court pointed out that in case of a tenant's action against the landlord "actionable negligence may exist even though the injured jarty may be aware of the defect and its dangerous potentialities." The Court also said: "In a business invitee case, plaintiff's knowledge of the existence of a dangerous condition constitutes a defense to an action for injuries. But, in a landlord-tenant case, plaintiff's knowledge of a defect in the premises is of force only in so far as it bears upon his contributory negligence; and a finding that he had no knowledge thereof is not an essential element of his cause of action. * * * He may have some knowledge of a defective condition in the premises and, nevertheless, use them, providing that he exercises due care in view of the hazard, unless it is of such a dangerous character that no reasonable person, in the exercise of due care, would use them."

In Gaines v. Schneider, Mo.App., 323 S.W.2d 401, 404 [2], the Court pointed out that "the continued use by a tenant of a portion of the premises which is defective and which it is the landlord's duty to repair, does not, standing alone, convict the tenant of contributory negligence as a matter of law if he continues to use the same, provided it reasonably appears that he can safely do so with the exercise of care. * * * Unless the defective condition is so open, obvious and dangerous (what is described in some cases as 'glaringly dangerous') that it can be said that no reasonably prudent person would have done as the injured party did, the issue of contributory negligence is one for the jury." And see Coats v. Sandhofer, Mo.App., 248 S.W.2d 455, 458 [5, 6].

■ In ruling appellants' contention that the trial court erred in overruling defendant's motion for a directed verdict, we have reviewed the evidence in a light favorable to plaintiff. It now becomes necessary to state that defendants' evidence tended to show that there was no wax on the steps; that the venetian blinds on the door were never closed; that the drapes on the door were white and narrow; that the steps of the stairway were regularly cleaned by hand; that they had not been varnished for two years; that the design and construction of the steps conformed to the custom and practice of the locality and was proper; that the use of varnish was recognized as an acceptable practice; that varnish did not make steps slippery, nor was varnish considered slippery material; and that the steps were in good condition and the stairway well lighted when plaintiff fell.

■ Disregarding the conflicts in the evidence with reference to the condition of the steps, defendants' Instruction D-4 submitted to the jury a finding as follows: "* * * you are instructed that if you find and believe from the evidence, that the plaintiff failed to look where she was walking as she descended from the lower landing of the stairway mentioned in the evidence, * * * and if you further find that by the exercise of ordinary care, she saw, or *could have seen the condition of said stairway below said lower landing, if so, and she thereby failed to exercise the care which an ordinary prudent person would have exercised* under like or similar circumstances, and if you find that by reason of the foregoing, the plaintiff was negligent, and if you find that such negligence (if you find plaintiff was negligent), directly and proximately caused or contributed to the plaintiff's injuries, then your verdict should be for the defendants regardless of what you find with respect to the conduct of the defendants submitted in other instructions." (Italics ours.)

There was no evidence in the record that "plaintiff failed to look where she was walking as she descended from the lower landing," nor that she did not see *the condition of the stairway below said lower landing,* but the instruction submitted no finding as to the condition of the steps from which an inference could be drawn that plaintiff failed to exercise ordinary care or that she was negligent in using the said

stairway. In determining "the condition of said stairway below said landing" the jury was not required by the instruction to find the facts in conformity to either plaintiff's evidence or defendants' evidence.

The defects in Instruction No. 4 are somewhat similar to an instruction considered by the Court in Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756, 759, where an instruction failed to hypothesize the facts constituting the "condition of the floor," although using those words, when there were two totally different versions of "the condition of the floor" shown by the evidence. And see Thaller v. Skinner & Kennedy Co., Mo.App., 339 S.W.2d 487; Russo v. Garrison, Mo.App., 357 S.W.2d 257, 259 [1]; Voyles v. Columbia Terminals Co., Mo.App., 239 S.W.2d 559, 561 (second instruction). While these cases are not tenant-landlord cases, nevertheless, they well illustrate the defects in the instruction now under consideration, D–4.

While the amended petition charged that the defendants "failed to provide an electric [light] switch at the top of said stairway that would turn on a light to illuminate the lower portion of said stairway" and said issue was supported by evidence and submitted by plaintiff's instruction, and while plaintiff had only used these stairs on two prior occasions and had not been instructed as to the lighting provided, and she had no knowledge as to the lights controlled by the two switches to the right of the outside entrance door, nevertheless, the defendants' offered and the Court gave Instruction No. 6 submitting a finding, as follows:

" * * * that if you find and believe from the evidence that on the occasion mentioned in evidence that the plaintiff, in the exercise of ordinary care should have known of the existence and location of the light switch in the downstairs hall mentioned in the evidence, which light switch controlled the light located in the downstairs hall, if you so find, and if you further find that plaintiff failed to operate said light switch and voluntarily chose to use said stairway without artificial light in said entrance hall and in so doing failed to exercise ordinary care, if you so find, then the Court instructs you that the plaintiff assumed whatever, if any, risk arose from the lack of such artificial light in said entrance hall, and that plaintiff is not entitled to recover against the defendants on account of any alleged lack of light on said stairway."

As stated, appellant relies on the Dietz and Smith cases which do not control the issue of contributory negligence as applicable to plaintiff in this case. Instruction D–6 is clearly erroneous on the basis of the landlord-tenant cases hereinbefore referred to. The evidence did not show the steps in question to have been so obviously dangerous that plaintiff should not have used the stairway provided for the common use of the several tenants. "The duty of inspection was on the landlord, not on the tenant, and if the stairway was not obviously unsafe, the latter assumed no risk in using it." Dalton v. John Maguire Real Estate Co., supra, 221 S.W. 443, 446 [8, 9]. the instruction further directly conflicted with one of plaintiff's assignments of defendants' negligence, to wit, in failing to provide a light switch as charged in her amended petition, and submitted by Instruction No. 1, and supported by Barber v. Kellogg, supra.

It will not be necessary to set out or further review the other instructions mentioned in the order granting a new trial to plaintiff. It is sufficient to say that in the event of another trial defendants may redraft the several instructions to conform to the law of the case.

The order granting a new trial to plaintiff is affirmed.

All concur.