Marian Louise WALSH, a minor by her next friend, Robert F. Walsh, Respondent,

v.

Evelyn V. PHILLIPS, Appellant.

Robert F. WALSH and Jeanne A. Walsh, Respondents,

v.

Evelyn V. PHILLIPS, Appellant.

Nos. 51350, 51351.

Supreme Court of Missouri, Division No. 1.

Jan. 10, 1966.

Motion to Amend Opinion and for Rehearing or for Transfer to Court En Banc Denied Feb. 4, 1966.

Opinion Modified on Court's Own Motion Feb. 14, 1966.

Wm. J. Hill, Kansas City, for respondents.

Henry G. Eager, Donald H. Loudon, Kansas City, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for appellant.

HENLEY, Judge.

These are actions (1) by a minor for damages of $100,000 for personal injuries, and, (2) by the minor's parents for damages of $25,000 for the loss of services and companionship of and medical expenses for their child. The cases were consolidated for purposes of trial by order of the court. Verdicts were for the defendant, pursuant to which the court entered judgment in each case. Plaintiffs' motions for new trial were sustained, the court assigning as reasons therefor (1) that the verdicts were contrary to the preponderance or greater weight of the evidence, and, (2) that the court had admitted evidence prejudicial to plaintiffs. Defendant appeals from the order sustaining plaintiffs' motions for new trial. The parties stipulated that the cases be consolidated for all purposes of appeal, and it was so ordered.

This court has jurisdiction because the amount in dispute, above stated, exceeds

$15,000. Article V, § 3, Constitution of Missouri, V.A.M.S.

Plaintiffs pleaded, and submitted their cases on, the res ipsa loquitur doctrine. Defendant contends that the evidence, viewed in the light most favorable to plaintiffs and with the benefit of all permissible inferences, does not make a submissible case under the doctrine; that, therefore, the verdicts and judgments in favor of defendant should be reinstated, notwithstanding that the court granted new trials upon discretionary grounds.

■ In determining whether the court properly exercised its discretion in awarding new trials on the grounds stated, we examine the record to ascertain whether there was sufficient substantial evidence to justify the submission of plaintiffs' cases to the jury; or to sustain verdicts for plaintiffs. Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660, 661 [2]; Walker v. Niemeyer, Mo., 386 S.W.2d 87, 92 [3]. In making this determination we view the evidence, including defendant's evidence wherein it may aid plaintiffs' case, in the light most favorable to plaintiffs, giving them the benefit of all permissible inferences. Martin v. First National of Independence Co., Mo., 372 S.W.2d 919, 925 [5]; Walker v. Niemeyer, supra, 386 S.W.2d l. c. 89 [1 2]; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109 [2].

Plaintiffs, a family of three consisting of the husband, wife and their 5½-year-old daughter, were tenants of defendant, having rented an apartment from defendant (and defendant's husband, a party defendant who died prior to trial) at 3323 Campbell Street, Kansas City, Missouri, approximately two months prior to August 8, 1957, the place and date of the injury to Marian, the child. The apartment occupied by plaintiffs was on the first floor of a stone two-story one-family type residence building which had been converted into four apartments with two apartments on the first and two on the second floor. The front entrance to this apartment building was through a doorway opening into a large hallway from which entrance was made to the first floor apartments. In the hallway was a stairway leading to the second floor apartments. This front doorway was provided by defendant for and was used as a common entranceway by all tenants of the building. A part of this doorway was an ordinary wood screened door hung by hinges on what would be the left side of one leaving the premises. The door was so set into the recessed entrance that the outside edge or corner of the stone doorway would prevent the arc of the door, when opened, from being more than approximately 100 degrees. Controlling this screen door was an ordinary metal coil spring, one end of which was attached by a screw eye to the door jamb on the hinge side and the other end similarly attached to a horizontal board of the door at about the same height as the door handle. Outside this doorway was a porch, the floor level of which was about six to nine inches below the bottom of the floor and the hallway floor.

The other first floor apartment was occupied by the resident manager of the building, a Mrs. Mable Kinnunen, and her husband, Elmer. Both parents of Marian were employed: Mr. Walsh was a truck driver whose duties took him out of town; Mrs. Walsh worked in a gift shop about three blocks from the apartment. Mr. and Mrs. Walsh employed Mrs. Kinnunen as a baby-sitter to care for Marian during the hours of Mrs. Walsh's employment. Both parents and Mrs. Kinnunen describe Marian, at the age of 5½, as a normal, healthy, active child; a good child and obedient. Mrs. Kinnunen's duties as baby-sitter for Marian were to give her her meals, wash and iron her clothes, watch after her and give her her bath, "just what a mother would do with a child."

Late in the afternoon of August 8, 1957, Mrs. Kinnunen had given Marian her bath and they left the Kinnunen apartment to go through the hallway to the outside. Marian

was running along ahead of her, "as a child will." While still "running along", when Marian reached the screen door she turned her head and body to her left striking the door with her right side and posterior parts of her body so that her head was turned more or less facing Mrs. Kinnunen. In so striking the door it was pushed out to about an 100 degree angle, " * * * back pretty far * * * like a child will do that sometimes", * * * "real far, too far", but it did not hit the stone wall. Walking along about twelve feet behind Marian, Mrs. Kinnunen called out cautioning the child against opening and going through the doorway in the manner described above; at the same instant Marian screamed. She had been struck in her right eye by a sharp object. Whether it was a sharp end of the spring itself that struck her eye, or the screw eye that had held an end of the spring to the door jamb, is unknown but it was one or the other. Later that evening defendant found the spring hanging from the door; she testified that the screw had "pulled out" or "came out" of the door jamb and that she had her maintenance man put the screw back in. Jack Lemmons, the maintenance man, testified that he does not recall the incident of Marian being hurt so that he cannot relate in point of time this incident and his going to the apartment house in August, 1957, where he found the screw eye pulled out of the door jamb. He said he put the screw eye back in the same hole; that the condition of the wood, the screw and the spring was good.

The only witnesses to the occurrence were Marian and Mrs. Kinnunen. Marian testified that she remembers Mrs. Kinnunen; that she remembers going to the hospital, but nothing else about the occurrence itself. Mr. and Mrs. Walsh and Mrs. Kinnunen indicated they had never paid particular attention to the doorway as they went in and out the building, and said they had never noticed anything wrong, unusual or dangerous about the door and its spring.

The sharp object that struck Marian penetrated a portion of her right eyeball and as a result of this injury she lost permanently the sight of that eye.

The doctrine of res ipsa loquitur applies only when (1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (2) the instrumentality involved was under the management and control of defendant; and, (3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, 329 Mo. 527, 46 S.W. 2d 557, 559, 92 A.L.R. 641; Adam Hat Stores, Inc., v. Kansas City, Mo., 316 S.W. 2d 594, 597 [2].

In a res ipsa case the plaintiff has the burden of proving each factual element necessary to a submissible case. A factor bearing on the quantum of proof necessary to make a submissible res ipsa case is the duty owed the plaintiff by defendant. Shafer v. Southwestern Bell Telephone Co., supra, 295 S.W.2d l. c. 111. "It is the well-settled law that where premises are left to several tenants, as in this case, and where such tenants use certain portions thereof in common, such as halls, stairways, entranceways, and the like, such portions of the premises are held to have been reserved by the landlord for the common use of the tenants and he is in control thereof and is liable for their maintenance, care, and reasonable safety." Sherman v. Bobrecker, Mo., 322 S.W.2d 898, 902 [2]; Fitzpatrick v. Ford, Mo., 372 S.W.2d 844, 849 [1]; Gateway Chemical Company v. Groves, Mo., 338 S.W.2d 83.

Was this occurrence, that is, the screw eye pulling out of the door jamb, such as does not ordinarily happen if those in charge use due care? We think so. It has been said that "the occurrence or 'thing' which speaks of negligence * * * is not the injury nor the act or omission of the defendant, nor is it the instrumen-

tality. It is the unusual occurrence of the instrumentality in the causal chain of events which connects the injury to the act or omission of the defendant." Shafer v. Southwestern Bell Telephone Co., supra, 295 S.W.2d l. c. 114. Having provided for her tenants' use a door and its retaining spring, defendant's duty, in the exercise of due care, was to so install and maintain the spring and the screw by which it was attached to the doorway (of which it was a part) that its use by her tenants for the purpose for which it was intended would not cause the screw to pull out to the injury of a tenant. Doors and springs as well as screw eyes of the type mentioned in the evidence are in common use. Properly installed and maintained it is an unusual occurrence that a screw eye will pull out of a door jamb, one that does not ordinarily happen. In the ordinary course of events the screw eye would not pull out had the defendant used proper care. This extraordinary and unusual occurrence speaks of and infers negligence on the part of defendant. Cruce v. Gulf, Mobile & Ohio Railroad Co., 358 Mo. 589, 216 S.W. 2d 78, 80 [2–5]; Clark v. Linwood Hotel, Inc., 365 Mo. 982, 291 S.W.2d 102, 106 [2]; Littlefield v. Laughlin, Mo., 327 S.W.2d 863, 865 [2]; Gateway Chemical Co. v. Groves, Mo., 338 S.W.2d 83, 85 [2]; Young v. Missouri Public Service Co., Mo., 374 S.W.2d 59, 62 [2].

Was the instrumentality involved under the management and control of defendant? This requirement of the res ipsa doctrine " * * * that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed." McCloskey v. Koplar, supra, 46 S.W.2d l. c. 560 [2]; Maxie v. Gulf, Mobile & Ohio Railroad Co., 356 Mo. 633, 202 S.W.2d 904, 911 [5]; Littlefield v. Laughlin, supra, 327 S.W.2d l. c. 865 [3]; Cruce v. Gulf, Mobile & Ohio Railroad Co., supra, 216 S.W.2d l. c. 80 [3]. Defendant's answer admits that

she owned this apartment house and provided and maintained this doorway and the screen door and coil spring attached to the door and door jamb for the use in common of her tenants and their families. This child certainly had no "right of control" over the door or the spring and its attachments in the true sense of that requirement. She had no control over the physical forces that came into play when she used the door for the purpose for which it was provided; she was helpless. The door, its spring and attachments were under the management and control of defendant at the time of the occurrence.

Defendant contends that it is more reasonable to infer that the spring broke or became detached from the door jamb because of any one of several reasons, including: (1) the unusual manner in which Marian opened the door; (2) Marian's past abuses of this door; (3) a latent defect or recent malfunction in the spring or door; (4) acts of third persons; or, (5) physical limitations of the spring itself. Defendant contends that for none of these reasons would she be responsible; that for these reasons plaintiffs failed to make a submissible case. She argues that the chain of causation was interrupted by Marian's unusual or abnormal manner or method of opening the door. In describing the manner in which the child opened the door, Mrs. Kinnunen said " * * * the normal way would be to go forward out the door * * * " and "to push the door open that wide, * * * I wouldn't think that was normal." We say parenthetically and base no part of our decision on this statement: "normal" is a relative term; she was, of course, referring to the actions of a child, and what are normal actions to her as an adult are not necessarily the normal actions to be expected of a child. Our observation is that this is a normal manner of going through a doorway by most active, healthy children of that age.

No doubt the screw eye would not have pulled out at the moment of Marian's

injury had the door not been opened putting into play the elastic power of the spring on the screw, but the opening of the door was necessary for exit. The question of whether this manner or method of opening the door was the producing cause of the screw coming loose is one of fact on which reasonable minds could differ. In Walker v. Niemeyer, supra, 386 S.W.2d 1. c. 93 [5], we said: " 'Negligence does not become a question of law alone unless the *acts* upon which its existence depends are of such character that all reasonable men would concur; and where different conclusions can be drawn from the evidence, it is a jury question.' " (Emphasis supplied.) We decline to hold as a matter of law that the manner of the child's act was the producing cause of this occurrence. Adam Hat Stores, Inc., v. Kansas City, Mo., 316 S.W. 2d 594, 599 [5]. The facts and circumstances, stated favorably to plaintiffs, warrant an inference that this occurrence would not have happened absent negligence on the part of defendant. Cruce v. Gulf, Mobile & Ohio Railroad Co., supra; Young v. Missouri Public Service Co., Mo., 374 S.W.2d 59, 63 [4]; McCloskey v. Koplar, supra, 46 S.W.2d 1. c. 563 [4–6].

■ As to "Marian's past abuses of this door" as a cause or reason for the screw eye pulling out of the door jamb, there is no evidence that this was a cause. Defendant implies that such may have been a cause. The only evidence to which she could have reference is that Marian had been seen to "hit the door all at once and go out of it", opening it to its capacity, and had been seen to swing on the door. There is no showing by defendant that such prior use of the door by the child loosened the screw eye or caused it to pull loose on the occasion of her injury. Nor is there any substantial evidence that the specific cause of the occurrence was a latent defect in or a recent malfunction of the spring or door, nor that it was due to acts of third persons or physical limitations of the spring itself. Mr. Kinnunen testified that he "noticed after the accident that the end of

the coil spring attached to the door jamb was broken * * *." Defendant argues that "if the end of this spring broke off, as Mr. Kinnunen thought it did the likely cause would be a latent defect. * * *" He didn't say that the end of the spring itself broke *off*. This is not substantial evidence that a latent defect was the specific cause of the occurrence; his testimony that the end of the spring attached to the door jamb "was broken" is consistent with what his former landlord, the defendant, said: that she found the spring hanging from the door, the other end having pulled out of the door jamb. Defendant's theory of a latent defect is refuted by the testimony of Jack Lemmons who said he found the spring in good condition when he reinstalled it.

■ Defendant contends that plaintiffs' evidence failed to exclude the hypothesis that the screw eye pulled loose because of Marian's voluntary acts (as distinguished from contributory negligence) or because of a latent defect, physical limitations or recent malfunction of the spring, or from acts of third parties. While there are statements in a few cases which appear to be to the contrary, this court, en banc, in Adam Hat Stores, Inc., v. Kansas City, Mo., 316 S.W.2d 594, 600 [7], held that a plaintiff in a res ipsa loquitur case is not required to exclude every other reasonable theory of nonliability on the part of a defendant. Littlefield v. Laughlin, supra, 327 S.W.2d 1. c. 866 [5]; Bone v. General Motors Corporation, Mo., 322 S.W.2d 916, 921 [1–4], 71 A.L.R.2d 361.

■ We do not agree with defendant's argument that the cause of this occurrence is not peculiarly within the knowledge of the defendant within the meaning of the third essential element of the res ipsa doctrine: " * * * that the defendant possesses superior knowledge or means of information as to the cause of the occurrence." Pursuing this argument, defendant says that plaintiffs lived in this building, constantly used this entrance, observed

it immediately after Marian's injury, and engaged an attorney the next day; that for these reasons the circumstances surrounding the incident were as easily accessible to plaintiffs as to defendant. As indicated above, neither of the adult plaintiffs had ever paid particular attention to the doorway; and, of course, there would be no occasion for them to notice the several parts thereof prior to the occurrence. Mr. Walsh stated, "it was just a door that I walked through." And that statement probably expresses the attention paid the doorway by Mrs. Walsh and Marian. Mrs. Walsh said that she noticed the door as she entered the building on being called home from her employment because of her child's injury. It would be reasonable to infer that she didn't tarry long at the entranceway on that occasion. She said she did notice that the spring had been reinstalled.

The defendant testified that she went to the apartment house two or three times a week; that she went to the building the evening of the day of Marian's injury; that she "looked at the door and the screw had came out and it was hanging"; that she had her maintenance man fix it. Defendant's maintenance man testified he was at the apartment building "almost every day, sometimes two or three times a day" and was familiar with the door and spring and had never seen anything wrong with it; that he put the same spring back on the door. We conclude that under these circumstances the defendant had superior knowledge or means of information as to the cause of this occurrence. Adam Hat Stores, Inc., v. Kansas City, supra, 316 S.W.2d l. c. 599 [6]; Cruce v. Gulf, Mobile & Ohio Railroad, supra, 216 S.W.2d l. c. 81 [5]. See also: Cruce v. Gulf, Mobile & Ohio Railroad Co., 361 Mo. 1138, 238 S.W.2d 674.

We hold that a submissible case of negligence was made by plaintiffs against defendant under the res ipsa loquitur doctrine.

The order of the trial court granting plaintiffs a new trial in each case is affirmed and the causes are remanded.

All concur.